# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# WICHITA FALLS DIVISION

| | |
|---|---|
| EDYTHE KOCH, § § Plaintiff, § § v. § § METROPOLITAN LIFE INSURANCE § COMPANY, § § Defendant. § | Civil Action No. 7:18-cv-00154-O |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Metropolitan Life Insurance Company's ("MetLife") Motion for Summary Judgment, Brief in Support, and Appendix in Support (ECF Nos. 18–20), filed August 1, 2019; Plaintiff Edythe Koch's ("Mrs. Koch") Response, Brief in Support, and Appendix in Support (ECF Nos. 24–26), filed September 4, 2019; and MetLife's Reply (ECF No. 27), filed September 18, 2019. Having reviewed the motion, briefing, and applicable law, the Court finds that a motion for summary judgment is not the appropriate vehicle for resolution of this case. Instead, the Court must conduct a de novo review of the administrative record to determine whether MetLife correctly concluded that Mrs. Koch failed to show that an accident was the direct and sole cause of her late husband's, Barry Koch's ("Mr. Koch"), death.

Accordingly, the Court **DENIES** MetLife's Motion for Summary Judgment. Based on an independent review of the administrative record, the Court concludes that Mrs. Koch has not carried her burden of establishing that she is entitled to accidental death benefits based on the terms of her life insurance plan (the "Plan") and the facts included in the administrative record. Thus, the Court **AFFIRMS** MetLife's denial of benefits.

1

I.       **FACTUAL BACKGROUND**[1]

Following the unexpected death of her husband, Mrs. Koch filed a claim for accidental death benefits under her Plan. *See* AR 118, ECF No. 20. To support her claim that Mr. Koch died as a result of an "accidental injury," Mrs. Koch submitted several documents, including Mr. Koch's "death certificate, the Employer's Statement, a letter from an attorney for [Mrs. Koch], a letter from the medical examiner, a toxicology report, and documents from the hospital." Def.'s Br. Supp. Mot. Summ. J. 2, ECF No. 19 (citing AR 124–52). These documents—along with the Plan and the summary plan description, the parties' correspondence, and other medical records Mrs. Koch supplied upon MetLife's request—ultimately comprise the 541-page administrative record. *See generally* AR. Though Mrs. Koch contended that her husband "died accidentally" after he "suffered a fall while getting out of bed, causing damage to his neck resulting in his death," Br. Supp. Pl.'s Resp. 2, ECF No. 25 (citing AR 120, 152), MetLife reviewed the medical records, concluded that the death was "natural," and twice denied Mrs. Koch's claim, Def.'s Br. Supp. Mot. Summ. J. 4–6, ECF No. 19 (citing AR 193–94, 539–41).

In its letter affirming the initial denial of her claim, MetLife pointed Mrs. Koch to the Plan's exclusionary language. *See* AR 539–41. Under the Plan, Mrs. Koch, as the policyholder, is entitled to benefits "if [she] or [her] Dependent sustains an accidental injury that is the Direct and Sole Cause of a Covered Loss." AR 41, 540. "Direct and Sole Cause means that the Covered Loss . . . was a direct result of the accidental injury, independent of other causes." *Id.* Additionally, the Plan specifically states that MetLife "[w]ill not pay benefits . . . for any loss caused or contributed

---

[1] The Court takes the following facts from the undisputed portions of the parties' briefing and from the administrative record that Defendant Metropolitan Life Insurance Company considered before determining that Plaintiff Edythe Koch could not recover under her life insurance plan. The entire administrative record is included in the Appendix in Support of Defendant's Motion for Summary Judgment. *See generally* App. Supp. Mot. Summ. J., ECF No. 20 [hereinafter "AR"].

to by: (1) physical or mental illness or infirmity, or the diagnose or treatment of such illness or infirmity." *Id.* The Plan also places the burden on the policyholder to submit "Proof of the accidental injury and Covered Loss." *Id.*

Following MetLife's affirmance of denial, Mrs. Koch filed suit in Texas state court. *See* Notice of Removal 1 & Ex. A, ECF No. 1. MetLife removed the case to federal court, asserting that Mrs. Koch's state-law claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id.* at 2–3. MetLife then moved for summary judgment, arguing that the undisputed facts in the closed administrative record support its denial of accidental death benefits. *See* Def.'s Br. Supp. Mot. Summ. J. 14, ECF No. 19. Mrs. Koch responds that summary judgment is inappropriate, as the administrative record includes factual inconsistencies amounting to genuine issues of material fact. *See* Br. Supp. Pl.'s Resp. 1, ECF No. 25.

The parties contest the appropriate vehicle for resolving the case, the standard of review, and the scope of the administrative record. *See generally* Def.'s Br. Supp. Mot. Summ. J., ECF No. 19; Br. Supp. Pl.'s Resp., ECF No. 25. Ultimately, though, the parties' dispute boils down to a single issue: whether the evidence Mrs. Koch submitted for MetLife's review establishes that an "accidental injury" was the "[d]irect and [s]ole [c]ause" of her husband's death.

## II. LEGAL STANDARD

### A. Summary Judgment

The Court may grant summary judgment where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When reviewing the evidence on a motion for summary judgment, courts must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th

3

Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rather, if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250.

### B. ERISA

Under ERISA, an insurance plan "participant or beneficiary" may file suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Limiting relief to that which "will enforce '*the terms of the plan*' or the statute, § 1132(a)(3) (emphasis added) . . . reflects ERISA's principal function: to protect contractually defined benefits." *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013) (internal citations omitted).

In Texas, district courts review plan administrators' legal and factual determinations de novo. *See Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 250, 256 (5th Cir. 2018). Unlike under the abuse of discretion standard, the administrator's decision to deny benefits "is not afforded deference or a presumption of correctness" when reviewed de novo. *Pike v. Hartford Life & Accident Ins. Co.*, 368 F. Supp. 3d 1018, 1030 (E.D. Tex. 2019). Rather, the court must "independently weigh the facts and opinions in the administrative record to determine whether the claimant has met his burden of showing that he is disabled within the meaning of the policy." *Id.*

"A claimant under section 1132(a)(1)(B) has the initial burden of demonstrating entitlement to benefits under an ERISA plan . . . ." *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 n.9 (5th Cir. 1993). Thus, the claimant must supply the evidence demonstrating that she is entitled to benefits by a preponderance of the evidence. *See Pike*, 368 F. Supp. 3d at 1031. Moreover, the administrator "is not under a duty to 'reasonably investigate' a claim." *Gooden v.*

4

*Provident Life & Accident Ins. Co.*, 250 F.3d 329, 333 (5th Cir. 2001) (citing *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 298 (5th Cir. 1999) (en banc), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)). Typically, "[o]nce the record is finalized, a district court must remain within its bounds in conducting a review of the administrator's findings, even in the face of disputed facts." *Ariana M.*, 884 F.3d at 256 (citing *Vega*, 188 F.3d at 299). Departure from this rule is only appropriate "in very limited circumstances." *Id.*

## III. ANALYSIS

Based on the terms of the Plan and the evidence in the administrative record, the Court must resolve whether Mrs. Koch has proven by a preponderance of the evidence that an "accidental injury" was the "[d]irect and [s]ole [c]ause" of her husband's death. AR 41. However, before analyzing the merits of Mrs. Koch's claim, the Court must determine the appropriate vehicle for their resolution, the proper standard of review, and the scope of the administrative record.

### A. Summary Judgment

MetLife contends that "[t]he undisputed evidence supports MetLife's claim determination that accidental death benefits were not payable under the terms of the Plan because [Mr. Koch's] death was 'caused or contributed to by . . . physical or mental illness or infirmity'" and urges the Court to uphold its determination on summary judgment. Def.'s Br. Supp. Mot. Summ. J. 14, ECF No. 19. In response, Mrs. Koch asserts that MetLife "ignored the conflicting accounts in the administrative record regarding how the medical incident took place," which "alone results in fact issues more than sufficient to require denial of [MetLife's] Motion for Summary Judgment." Br. Supp. Pl.'s Resp. 10, ECF No. 25. The Court finds that the administrative record includes genuine issues of material fact and concludes that an independent review of the administrative record—not summary judgment—is necessary to resolve this dispute.

5

The Fifth Circuit recently aligned itself with seven other circuits that read the Supreme Court's opinion in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)—hereinafter "*Firestone*"—to create a default de novo standard that applies to plan administrators' legal and factual determinations alike. *Ariana M.*, 884 F.3d at 248. In doing so, it closed a circuit split in which it "long stood alone." *Id.* Before *Ariana M.*, when a district court within the Fifth Circuit reviewed factual issues under the abuse of discretion standard, it addressed whether there was substantial evidence to support the administrator's factual findings. *See Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991), *abrogated by Ariana M.*, 884 F.3d 246. Thus, on summary judgment, issues of material fact did not preclude a district court from granting summary judgment, provided the administrative record included substantial evidence for denial of the claim. *See, e.g.*, *Stone v. Prudential Ins. Co. of Am.*, 226 F. Supp. 2d 818, 825 (W.D. La. 2002) (applying *Pierre*'s abuse of discretion standard, and granting the administrator's motion for summary judgment despite conflicting expert opinions in the administrative record). Since the shift to a full de novo review in such cases, the Fifth Circuit has not addressed whether district courts may grant summary judgment despite genuine issues of material fact in the administrative record. Thus, the Court looks to other circuits for guidance, inquiring: Do the factual inconsistencies in Mr. Koch's medical records preclude the Court from granting summary judgment?

As could be expected given the "labyrinthine complexities of ERISA law and practice," there is yet another circuit split on this issue. *Foltz v. U.S. News & World Report*, 760 F.2d 1300, 1308 (D.C. Cir. 1985) (Starr, J.). The First Circuit holds that courts can grant summary judgment despite fact issues in the administrative record. *See Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 518 (1st Cir. 2005) ("Where review is properly confined to the administrative record before the ERISA plan administrator . . . there are no disputed issues of fact for the court to resolve.").

The Second, Seventh, and Ninth Circuits hold that courts must deny summary judgment when the administrative record includes factual discrepancies. *See, e.g.*, *O'Hara v. Nat'l Union Fire Ins. Co.*, 642 F.3d 110, 117 (2d Cir. 2011) ("[R]egardless of the district court's standard of review of the plan administrator's denial of benefits, a district court may not grant a motion for summary judgment if the record reveals a dispute over an issue of material fact."); *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 484 n.3 (7th Cir. 2007) (distinguishing itself from the First Circuit, and stating that the Seventh Circuit "do[es] not apply [the First Circuit's] potentially misleading standard for 'summary judgment,' but instead appl[ies] the normal rule: *de novo* review, with judgment appropriate if there is no genuine issue of material fact"); *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094 (9th Cir. 1999) ("Because the record establishes a genuine issue of fact as to whether Mr. Kearney was disabled under the terms of the policy, we must reverse the summary judgment."). The Sixth Circuit held that neither a bench trial nor summary judgment is appropriate in ERISA cases, but instead provided "suggested guidelines" about how district courts should adjudicate these actions, including "conduct[ing] a *de novo* review based solely upon the administrative record, and render[ing] findings of fact and conclusions of law accordingly." *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring in the judgment and delivering the opinion of the court on the summary judgment issue). And while the Eighth Circuit has recognized that "[c]ourts have struggled with the use of summary judgment to dispose of ERISA cases," it "decline[d] to decide the propriety of the use of summary judgment procedures" in a case in which the issue was not raised by the parties. *Khoury v. Grp. Health Plan, Inc.*, 615 F.3d 946, 951 n.4 (8th Cir. 2010).

The Court is persuaded by the Ninth Circuit's view that, when "the record establishes a genuine issue of fact" as to whether a claimant is covered by the policy, summary judgment is

inappropriate. *Kearney*, 175 F.3d at 1094; *see also Pike*, 368 F. Supp. 3d at 1071 (citing *Kearney*, 175 F.3d 1084). In *Kearney v. Standard Insurance Company*, the Ninth Circuit reviewed a district court's grant of summary judgment in a case in which various doctors' competing views created a fact issue regarding whether the claimant was "disabled under the terms of the policy." 175 F.3d at 1084. After reversing summary judgment, the Ninth Circuit remanded the case because "the genuine issue of fact must be resolved by trial." *Id.* However, it noted a "complexity." *Id.* "If the trial start[ed] from scratch . . . 'review' would be converted into a trial de novo based on evidence entirely unrestricted by what had been presented to the administrator." *Id.* Such a review would be inconsistent with ERISA's purposes and the Supreme Court's precedent. *See id.* (citing 29 U.S.C. §§ 1001b(c)(3),(5), 1133(2) and *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)). So instead of remanding for a full trial, the Ninth Circuit decided that "the district court may try the case on the record that the administrator had before it," which would be "vastly less expensive to all parties, accomplish[] the policies enacted as part of the statute, and also give[] significance, which would otherwise largely evaporate, to the administrator's internal review procedure required by the statute." *Id.* at 1095. But the Ninth Circuit also distinguished the trial on the record from the district court's grant of summary judgment. *Id.* "In a trial on the record, but not on summary judgment, the judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true . . . [and then] make findings of fact under Federal Rule of Civil Procedure 52(a)." *Id.*

Adopting this approach, the Court **DENIES** MetLife's Motion for Summary Judgment and proceeds to conduct an independent review of the administrative record.

    **B. ERISA**

        1. Standard of Review

Before reviewing the record, the Court must determine whether the Plan's discretionary clause requires the Court to apply an abuse of discretion standard—rather than *Firestone*'s default de novo standard—to the plan administrators' factual findings.

"When an ERISA plan lawfully delegates discretionary authority to the plan administrator, a court reviewing the denial of a claim is limited to assessing whether the administrator abused that discretion." *Ariana M.*, 884 F.3d at 247 (citing *Firestone*, 489 U.S. at 115). However, when a plan does not include a valid delegation clause, "the Supreme Court has held that 'a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard.'" *Id.* (citing *Firestone*, 489 U.S. at 115). "In 2011, Texas enacted legislation that banned discretionary clauses in . . . policies including those for 'accident or health insurance.'" *Woods v. Riverbend Country Club*, 320 F. Supp. 3d 901, 908 (S.D. Tex. 2018) (citing TEX. INS. CODE §§ 1701.062(a), 1701.002). Though there is an open question as to whether ERISA preempts this state law, the Fifth Circuit declined to answer the question when it was not raised. *See Ariana M.*, 884 F.3d at 248.

Here, MetLife mentions the unresolved issue but does not argue that ERISA preempts the Texas Insurance Code's provision. *See* Def.'s Br. Supp. Mot. Summ. J. 9 n.3, ECF No. 19. Although MetLife argues that it should prevail regardless of whether the Court enforces the Plan's discretionary clause (AR 100–01), it provides the Court with an example of an analogous case in which a Texas district court reviewed the plan administrators' legal and factual determinations de novo. *See id.* (discussing *Pike*, 368 F. Supp. 3d at 1029–31). In *Pike v. Hartford Life and Accident Insurance Company*, the court noted that the parties stipulated that de novo review applied. 368 F. Supp. 3d at 1024. However, it also cited Texas's ban on insurance-plan discretionary clauses as a reaction to *Firestone*, suggesting that the court would have independently reached this conclusion.

9

*Id.* at 1024 n.2. Based on the Fifth Circuit's analysis in *Ariana M.* and the district court's application in *Pike*, the Court concludes that the Texas Insurance Code prevents application of the Plan's discretionary clause. Accordingly, the Court conducts a de novo review of both the law and the facts.

    2.  Scope of the Administrative Record

Next, the Court considers whether it ought to review the administrative record as is, as MetLife argues, or accept Mrs. Koch's various arguments regarding the incompleteness of the administrative record. *Compare* Def.'s Reply 6–7, ECF No. 27, *with* Br. Supp. Pl.'s Resp. 6–10, ECF No. 25. Mrs. Koch first argues that MetLife "fail[ed] to obtain the correct information surrounding [Mr. Koch's] fall" and "did not properly pursue the information to properly understand" the impact of Mr. Koch's neck injuries. Br. Supp. Pl.'s Resp. 7–8, ECF No. 25. She also references the opinion of Dr. Dingler, whose report she includes in her Appendix but did not submit as part of the original administrative record. *See* App. to Pl.'s Resp. 1, ECF No. 26. The Court addresses each issue in turn.

A claimant seeking to receive benefits under an ERISA plan "has the initial burden of demonstrating entitlement" to such benefits. *Perdue*, 7 F.3d at 1254 n.9. In *Vega v. National Life Insurance Services, Inc.*, the Fifth Circuit's "leading case" on the scope of the administrative record in ERISA cases, *Ariana M.*, 884 F.3d at 256, the Circuit "foreclose[d] imposing . . . a duty to investigate on a plan administrator." *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 510 (5th Cir. 2013) (citing *Vega*, 188 F.3d at 299). It reasoned that "[t]here is no justifiable basis for placing the burden solely on the administrator to generate evidence relevant to deciding the claim, which may or may not be available to it, or which may be more readily available to the claimant." *Vega*, 188 F.3d at 298. And the Fifth Circuit "has reiterated, in cases subsequent to *Vega*, this principle

'that a conflicted administrator is not under a duty to "reasonably investigate" a claim.'" *Truitt*, 729 F.3d at 511 (quoting *Gooden*, 250 F.3d at 331–33) (citing *Dramse v. Delta Family-Care Disability & Survivorship Plan*, 269 F. App'x 470, 479 (5th Cir. 2008) (per curiam)).

Under both ERISA law and the terms of her Plan, Mrs. Koch carries the burden of proving that she is entitled to accidental death benefits. *See Perdue*, 7 F.3d at 1254 n.9; AR 100–01. Though Mrs. Koch acknowledges that courts generally review administrators' decisions "based upon the information known to the administrator at the time the decision was made," she seeks to invoke an exception from *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011 (5th Cir. 1992). Br. Supp. Pl.'s Resp. 6, ECF No. 25. In *Salley*, the Fifth Circuit stated, "[a]lthough we generally decide abuse of discretion based upon the information known to the administrator at the time he made the decision, the administrator can abuse his discretion if he fails to obtain the necessary information." 966 F.2d at 1015. In addition to the fact that the Court here reviews the administrator's decision de novo, there is a second key difference: Whereas the administrator in *Salley* reviewed only outdated medical records, *see id.* at 1014–16, MetLife reviewed all medical documents related to Mr. Koch's fall and his overall health, *see generally* AR. *See also Handy Prudential Ins. Co.*, 68 F.3d 467, 1995 WL 581613, at *3 (5th Cir. 1995) (unpublished) (distinguishing *Salley* when the administrator analyzed all the claimant's hospital records); *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 602–03 (5th Cir. 1994) (same).

Though MetLife twice requested additional medical documents to review Mrs. Koch's claim on administrative appeal, *see* AR 202–03, it was not required to do so. Thus, MetLife did not err by failing to seek additional information to complete its review of Mrs. Koch's claim. The administrative record, including all evidence Mrs. Koch submitted to support her claim, was

11

complete and sufficient for MetLife's review. But the Court still must decide whether Mrs. Koch can now add to the administrative record MetLife reviewed.

Under *Vega*, "a district court must remain within its bounds in conducting a review of the administrator's findings," once the record is finalized. *Ariana M.*, 884 F.3d at 256 (applying *Vega*, 188 F.3d at 299). This general rule applies "even in the face of disputed facts," and exceptions apply "only in very limited circumstances." *Id.* "One exception allows a district court to admit evidence to explain how the administrator has interpreted the plan's terms in previous instances. Another allows a district court to admit evidence, including expert opinions, to assist in the understanding of medical terminology related to a benefits claim." *Id.* (internal citations omitted). In both cases, the reviewing court does not "actually expand[] the evidence on which the merits are evaluated," but the record "provide[s] evidence to help the court evaluate the administrative record." *Id.*

In the Appendix to her Response, Mrs. Koch attaches a one-page report by Dr. Dingler, as well as several documents also included in the administrative record. *See generally* App. to Pl.'s Resp., ECF No. 26. Mrs. Koch's Response does not state a rationale or legal justification for including Dr. Dingler's report. *See* Br. Supp. Pl.'s Resp. 10, ECF No. 25. In fact, she only mentions the report once to say that "MetLife's conclusion that [Mr. Koch's] death was not accidental conflicts with the medical opinion of Dr. Dingler contained in [Mrs. Koch]'s Appendix." *Id.* The report itself does not include "evidence to explain how the administrator has interpreted the plan's terms in previous instances" nor does it "assist in the understanding of medical terminology related to a benefits claim." *Ariana M.*, 884 F.3d at 256 (citing *Vega*, 188 F.3d at 299). It merely provides yet another opinion as to the cause of Mr. Koch's death. *See* App. to Pl.'s Resp. 1, ECF No. 26

("It is my opinion that Mr. Koch died as a result of his cervical spine injury from his fall off of a horse."). Accordingly, the report should not be admitted under one of the *Vega* exceptions.

During the Court-scheduled hearing on November 12, 2019, Mrs. Koch's counsel stated that, should the case go to trial, Dr. Dingler could also testify regarding the terminology used in the medical documents included in the administrative record. Hr'g Tr. But as MetLife's counsel stated, Mrs. Koch has not argued that there are—nor does the Court independently find that there are—any disputed interpretations of terms used in the medical documents. *See id.* The only potentially ambiguous terms are "accident" and "accidental injury," which the Court need not define, as explained below. *See infra* p. 14. Thus, the Court need not decide whether the medical-terminology *Vega* exception could apply to Dr. Dingler's proposed live testimony.

Because the Court finds that the administrative record is complete, it proceeds to analyze the merits by reviewing the same 541-page record that Mrs. Koch provided and MetLife reviewed.

3. De Novo Review of the Administrative Record

Having resolved the issues regarding the proper procedural vehicle, standard of review, and scope of the record, the Court finally reaches the single merits issue: Does the administrative record support Mrs. Koch's claim that an "accidental injury" was the "[d]irect and [s]ole [c]ause" of Mr. Koch's death? AR 41.

A court must "in a *de novo* review, independently weigh the facts and opinions in the administrative record to determine whether the claimant has met his burden of showing that he is disabled within the meaning of the policy." *Pike*, 368 F. Supp. 3d at 1030 (E.D. Tex. 2019) (internal citations omitted) (noting that the Fifth Circuit has not yet provided guidance regarding a district court's de novo review in ERISA cases, and looking to other circuits as persuasive authority). The administrator's decision to deny benefits "is not afforded deference or a

presumption of correctness." *Id.* A district court's review, however, is not open-ended; the court is confined to the terms of the Plan and the evidence included in the administrative record. Limiting relief to that which "will enforce '*the terms of the plan*' or the statute, § 1132(a)(3) (emphasis added) . . . reflects ERISA's principal function: to protect contractually defined benefits." *McCutchen*, 569 U.S. at 100 (internal citations omitted). "The statutory scheme . . . is built around reliance on the face of written plan documents. Every employee benefit plan shall be established and maintained pursuant to a written instrument, and an administrator must act in accordance with the documents and instruments governing the plan insofar as they accord with the statute." *Id.* at 100–01 (internal citations omitted). As the Supreme Court has stated, "[t]he plan, in short, is at the center of ERISA." *Id.* at 101.

Mrs. Koch claims that her husband "died as the result of an accidental injury," but correctly notes that "the Plan does not define 'accident.'" Br. Supp. Pl.'s Resp. 4–5, ECF No. 25; *see also* AR 41 (referencing death due to an "accidental injury"); AR 94 (referencing death due to an "accident"). As other courts have recognized, defining "accident" is "not as simple as it might first appear." *Carson v. Metro. Life Ins. Co.*, 72 F. Supp. 2d 725, 728 (W.D. Tex. 1999); *see also Brenneman v. St. Paul Fire & Marine Ins. Co.*, 192 A.2d 745, 747 (Pa. 1963) ("Everyone knows what an accident is until the word comes up in court."). Though Mrs. Koch encourages the Court to apply the common-law definition of "accident" applied in *Todd v. AIG Life Insurance Company*, 47 F.3d 1448, 1456 (5th Cir. 1995) and *Wickman v. Northwest National Insurance Company*, 908 F.2d 1077, 1088 (1st Cir. 1990), these cases are inapposite. *See* Br. Supp. Pl.'s Resp. 5, ECF No. 25. *Todd*, *Wickman*, and their progeny only apply to allegedly accidental deaths resulting from dangerous intentional conduct. *See, e.g.*, *Freeman v. Securian Life Ins. Co.*, 778 F. App'x 323 (5th Cir. 2019) (Russian Roulette); *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533 (5th Cir. 2012) (per

curiam) (drunk driving); *Todd*, 47 F.3d 1448 (autoerotic asphyxiation); *Wickman*, 908 F.2d 1077 (climbing over a guardrail). Thus, they offer little help in a case in which the decedent's conduct was "reasonable" and "not risky." Br. Supp. Pl.'s Resp. 6, ECF No. 25.

Fortunately, the resolution of this case need not hinge on the meaning of "accident." AR 94. Adopting the district court's reasoning in *Carson v. Metropolitan Life Insurance Company*—a case involving a nearly identical insurance plan, claim, and dispositive legal issue—the Court focuses the inquiry on "whether [the decedent's] death was in any way the result of mental or physical illness and is thus excludable from coverage under the accidental death policy." 72 F. Supp. 2d at 729 (Prado, J.). Accordingly, the Court presumes, for the sake of argument, that Mr. Koch's fall was indeed a covered accident. The question is whether Mrs. Koch has met her burden of proving that the presumed accident was the "[d]irect and [s]ole [c]ause" of Mr. Koch's death. AR 41.

When the Court reviews the administrator's decision de novo—just as when the administrator reviews the initial claim—the claimant "bears the burden of proving by a preponderance of the evidence" that she is entitled to benefits. *Pike*, 368 F. Supp. 3d at 1031. Here, the administrative record contains evidence pointing both directions—some records suggest that the fall caused Mr. Koch's death, while others suggest Mr. Koch died of a heart attack. For example, there is conflicting evidence regarding where he fell. Was it in the bathroom, as Mrs. Koch's attorney initially asserted; while getting out of bed, as the EMS report stated; or somewhere in between, as another EMT reported? *See* AR 128, 134, 152. And regardless, it is unclear when the heart attack occurred and whether it caused the fall or vice versa. Did Mr. Koch's obstructed airway—an alleged result of the fall—cause his death? *See* AR 132–33 (noting a hemorrhage in Mr. Koch's neck); AR 135 (noting failed intubation); AR 152 (noting failed intubation). Or was

the death "natural"? *See* AR 128 (listing "[h]ypertensive and atherosclerotic cardiovascular disease" as the cause of death); AR 142 (listing "cardiac arrest" as the chief complaint).

The record leaves many questions unanswered. But one thing is clear: Mrs. Koch, the party required to prove her claim by a preponderance of the evidence, cannot point to a single piece of evidence in the administrative record that proves the fall was the *sole* cause. At most, she can prove that *some* evidence suggests *potential* causation between Mr. Koch's fall and his subsequent death. Accordingly, Mrs. Koch has not carried the burden of establishing that Mr. Koch's fall was the direct and sole cause of his death.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **DENIED**. Based on an independent de novo review of the administrative record, the Court **AFFIRMS** MetLife's denial of benefits. Accordingly, Mrs. Koch's claim for accidental death benefits under her ERISA-governed insurance plan are **DISMISSED with prejudice**.

**SO ORDERED** on this **26th day** of **November, 2019**.

*[signature]*
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**